# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

*In re* **J.T. and C.H.**

**No. 20-0151** (Raleigh County 18-JA-228-D and 18-JA-229-D)

**FILED**

**September 3, 2020**

EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Mother K.T., by counsel P. Michael Magann, appeals the Circuit Court of Raleigh County's January 3, 2020, order terminating her parental rights to J.T. and C.H.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel S.L. Evans, filed a response in support of the circuit court's order. The guardian ad litem ("guardian"), Timothy Lupardus, filed a response on behalf of the children in support of the circuit court's order. Intervenor foster parent R.J., by counsel Winifred Bucy, also filed a response in support of the circuit court's order. On appeal, petitioner argues that the circuit court erred in terminating her parental rights rather than granting her a post-dispositional improvement period.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In September of 2018, the DHHR filed an abuse and neglect petition alleging that after C.H. was born drug-exposed the DHHR implemented several months of in-home safety services to protect the children, but petitioner's continued substance abuse resulted in the filing of the underlying petition. According to the DHHR, C.H. was born with methamphetamine, amphetamine, and tetrahydrocannabinol in his system in June of 2018, and petitioner tested positive for methamphetamine in August of 2018. The DHHR alleged that petitioner claimed, "someone put meth in a jug of tea at the house where [she and the children] were staying and that's how the substance got into her."

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W. Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W. Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W. Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W. Va. 641, 398 S.E.2d 123 (1990).

1

Prior to the adjudicatory hearing in May of 2019, petitioner tested positive for methamphetamine again. At the hearing, petitioner stipulated to the allegations of substance abuse. The circuit court accepted the stipulation, adjudicated petitioner as an abusing parent, and granted her a post-adjudicatory improvement period. The circuit court also ordered that petitioner undergo a psychological evaluation. Thereafter, a multidisciplinary team ("MDT") meeting was held and the MDT adopted petitioner's case plan that required her to submit to random drug screening, attend supervised visitations, and participate in adult life skills and parenting classes. At a review hearing held in August of 2019, the circuit court learned that petitioner tested positive for methamphetamine, had missed several drug screens, and had missed several supervised visitations with the children. Further, the circuit court reviewed the results of petitioner's completed psychological evaluation, which recommended that petitioner complete long-term inpatient drug treatment. The circuit court then ordered petitioner to submit applications for a long-term inpatient drug treatment program by August 16, 2019, or it would grant a motion to terminate her improvement period. Further, the circuit court suspended all supervised visitations due to petitioner's drug use. At the next review hearing held in September of 2019, petitioner failed to appear, and the circuit court terminated her improvement period.

Prior to the dispositional hearing in December of 2019, the DHHR filed a court summary requesting the termination of petitioner's parental rights. At the hearing, a DHHR worker testified that petitioner never obtained inpatient drug treatment, despite the circuit court's order to do so. He further testified that petitioner missed more than fifty drug screens as well as ten supervised visitations during her post-adjudicatory improvement period prior to the visits being suspended. Petitioner testified that she attempted to find inpatient drug treatment for two and a half weeks after the MDT adopted her case plan but could not find a program that would admit both her and C.H.'s father. However, petitioner testified that she recently found a program that would admit her and C.H.'s father, but she was unable to obtain billing information from the DHHR worker to secure placements for the program. When questioned by the guardian about her drug use, petitioner denied abusing methamphetamine while pregnant with C.H. and denied using methamphetamine during the pendency of the case. She further stated that she only stipulated to the allegations in the petition at adjudication to avoid the termination of her parental rights. In response to petitioner's argument that she should attend inpatient drug rehabilitation, the circuit court noted

> [The Court]: What good is rehab going to do? She's never tested positive for meth. She doesn't know how it got in her. She's not a drug addict so why go to rehab?
>
> . . . .
>
> [Y]ou go to rehab and you say those things you'll get kicked out. There will be no benefit to rehab because these [respondent parents] continue to deny that they have a drug addiction issue.
>
> . . . .
>
> [S]o it makes no sense to order continued inpatient rehab when they won't be compliant with the program, when they won't even say they

have a problem.

Ultimately, the circuit court found that returning the children to petitioner's care was not in the children's best interest because, by petitioner's "own testimony, [she is] not willing or able to correct the conditions of abuse . . . [and] won't admit [she has] a problem." The circuit court terminated petitioner's parental rights by its January 3, 2020, order. Petitioner now appeals that order.[2]

The Court has previously held:

"Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011).

On appeal, petitioner argues that the circuit court erred in denying her motion for a post-dispositional improvement period. She further asserts that she was unable to secure inpatient drug treatment during her post-adjudicatory improvement period but found a program that would admit her by the dispositional hearing. Petitioner asserts that she testified at the dispositional hearing that she would fully participate in a second improvement period as she had secured inpatient drug treatment. According to petitioner, these circumstances warranted the granting of another improvement period. We disagree.

West Virginia Code § 49-4-610(3)(B) provides that the circuit court may grant a parent a post-dispositional improvement period when the parent "demonstrates, by clear and convincing evidence, that the [parent] is likely to fully participate in the improvement period." Further, since petitioner was previously granted a post-adjudicatory improvement period during the proceedings, she was required to "demonstrate[] that since the initial improvement period, [she] ha[d] experienced a substantial change in circumstances [and] . . . due to that change in circumstances, [she was] likely to fully participate in the improvement period." W. Va. Code § 49-4-610(3)(D). We have noted that "West Virginia law allows the circuit court discretion in deciding whether to grant a parent an improvement period." *In re M.M.*, 236 W. Va. 108, 115, 778 S.E.2d 338, 345 (2015). Here, petitioner testified at the dispositional hearing that she did not abuse substances

---

[2]J.T.'s father's parental rights and C.H.'s father's parental rights were also terminated below. The permanency plan for the children is adoption by intervenor foster parent R.J.

while pregnant with C.H. and denied abusing methamphetamine during the course of the proceedings. Petitioner made these claims despite lab results to the contrary and her stipulation to the allegations of substance abuse at adjudication. We have previously held that failure to acknowledge the issues of abuse and neglect renders an improvement period an "exercise in futility." *In re Timber M.*, 231 W. Va. 44, 55, 743 S.E.2d 352, 363 (2013) (citation omitted). Below, the circuit court aptly explained that granting petitioner a second improvement period so she could attend inpatient drug treatment would be futile given her complete denial of her substance abuse addiction and resulting conditions of abuse and neglect. In fact, the circuit court found that petitioner would likely not be accepted into a program or would be removed from such a program for her failure to acknowledge her addiction. The circuit court correctly considered petitioner's past performance in her post-adjudicatory improvement period as convincing evidence that she would not comply with services, especially considering the lack of any change in her situation with her failure to acknowledge her drug addiction. Accordingly, we find that the circuit court did not err in denying petitioner's motion for an improvement period.

Petitioner also argues that the circuit court erred in terminating her parental rights to the children by finding that there was no reasonable likelihood that the conditions of neglect or abuse could be substantially corrected in the near future because she "had been complying with some of the goals of her improvement period and family case plan." We find that petitioner is entitled to no relief.

Petitioner recognizes that West Virginia Code § 49-4-604 provides that circuit courts may take the drastic step of terminating a parent's parental rights when "there is no reasonable likelihood that the conditions of neglect or abuse can be substantially corrected in the near future" and termination of the parent's parental rights is necessary for the welfare of the children. *Id.* She further concedes that circuit courts are not required to employ a less-restrictive alternative to the termination of a parent's parental rights upon finding that that there is no reasonable likelihood that the conditions of neglect or abuse can be substantially corrected in the near future. *See* Syl. Pt. 5, *In re Kristin Y.*, 227 W. Va. 558, 712 S.E.2d 55 (2011) (holding that termination of parental rights, "the most drastic remedy" in abuse and neglect cases, may be employed "when it is found that there is no reasonable likelihood . . . that conditions of neglect or abuse can be substantially corrected"). West Virginia Code § 49-4-604(d)(3) provides that there is "[n]o reasonable likelihood that the conditions of neglect or abuse can be substantially corrected" when

> [t]he abusing parent or parents have not responded to or followed through with a reasonable family case plan or other rehabilitative efforts of social, medical, mental health, or other rehabilitative agencies designed to reduce or prevent the abuse or neglect of the child, as evidenced by the continuation or insubstantial diminution of conditions which threatened the health, welfare, or life of the child.

Clearly, petitioner failed to respond to or follow through with a reasonable family case plan during the proceedings below. Petitioner was granted an improvement period, a case plan was formulated that required her to complete inpatient drug treatment, and she instead chose to place the convenience of being in the same program with C.H.'s father over the requirement to attend and complete an inpatient drug treatment program. Additionally, as discussed above, petitioner recanted her prior admissions at the final dispositional hearing and denied all drug use, thereby

thwarting any efforts to address the conditions of abuse and neglect. The record fully supports the finding that there was no reasonable likelihood that the conditions of neglect or abuse could be substantially corrected, and that termination of petitioner's parental rights was necessary for the children's welfare. Accordingly, we find no error in the circuit court's decision to terminate petitioner's parental rights, rather than impose a less-restrictive dispositional alternative.

For the foregoing reasons, we find no error in the decision of the circuit court, and its January 3, 2020, order is hereby affirmed.

Affirmed.

**ISSUED**: September 3, 2020

**CONCURRED IN BY**:

Chief Justice Tim Armstead
Justice Margaret L. Workman
Justice Elizabeth D. Walker
Justice Evan H. Jenkins
Justice John A. Hutchison